## WATSON *v.* RYND *et al.*

Treble damages may be recovered for cutting timber on the land of another. It is not absolutely necessary to prove that the defendant knew that the timber was not on his land.

Error to common pleas of Warren county.

Opinion delivered May 18, 1874, by

GORDON, J. If anything other than the Act of 1824 itself were wanting to show that the court below erred in refusing to treble the damages, found by the jury in this case, it may be found in the case of O'Reiley et al. *v.* Shadel, 9 Ca. 489. In that case it was expressly decided that the want of knowledge on the part of the trespasser did not relieve him from the penalty imposed by the third section of the act. And the intention of the legislature is therein pointed out by calling attention to the significant fact that the words "knowing the same to be growing or standing upon the lands of another person," used in the second section, which makes the cutting of such timber a criminal offence, are omitted in the third section which provides for the civil remedy alone.

The want of the owner's consent is that which makes t his part of the act effective. The significance of this omission is further added to by the wording of the first section of the act of 1840, wherein the penalties of the

third section of the act of 1824, are extended to "any person 'or persons who shall purchase or receive any timber, tree or trees *knowing* the same to have been cut or removed from the lands of another person without the consent of the owner or owners thereof." Here we see, as it would be obviously unjust to impose a penalty upon an innocent purchaser, the act is operative only where there is knowledge of the guilty cutting or removal of the timber. We may therefore conclude with certainty that these words were intentionally omitted in the third section of act of 1824.

The design of the statute was to prevent trespassing upon timber lands, and it has proved itself to be very valuable for that purpose. We do not, therefore, feel ourselves constrained to impair its provisions by any novel construction, and thus unsettle the uniform convictions of the bench and bar with reference to them.

The timber lands of this State have heretofore been regarded as a permanent and secure investment, owing to their steady advancement in value. Hence, the mere price of stumpage has not, as a rule, been regarded as a full compensation to the owner for the loss of his timber. Indeed three times such price will often not more than compensate him for his loss and the vexation and expense of a law suit. Beside this, it is in this country generally supposed that persons have a right to enjoy their honest acquisitions without molestation, and if any one chooses to trespass upon them, he must take the consequences.

In this case it is said that the trespass of Rynd was unintentional; that some one showed him the line run by Ludlow in 1850, as the true line between the two tracts and being thus misled, he cut to that line. But we do not understand that it was the plaintiff that showed him this line, or that he ever consulted the plaintiff about it. He certainly knew that the line to which he cut was not the warrant line; it was far too young for that. It was his duty, therefore, to ascertain from the owner of the adjacent tract, whether or not, that was the line to which he claimed, and if not, to delay his cutting until the matter could have been properly settled. It seems to us that this is what one who was *very* anxious about the rights of his neighbor would have done.

We may here observe that the cases cited by the defendants' counsel, of Herdic *v.* Young, 5 P. F. S. 176, and Craig *v.* Kline, 15 Id. 400, have no bearing upon this case, inasmuch as they involve the common law rule of assessment of damages, and not that arising under the statute. It follows from what has been said, that the court erred in discharging the plaintiff's rule. The jury having found single damages, the court should have trebled them.

And now, May 18th, 1874, the judgment of the court of common pleas of Warren county is reversed, and judgment is now entered upon the verdict in the sum of six hundred and seventy five dollars, that being treble the amount of the single damages found by the jury, with interest thereon from the 14th day of September, 1872. The record is remitted to said court for execution.