No. 6170.

WILLIAM NEUMANN v. GEORGE SHROEDER.

1. PAROL ACCEPTANCE OF CHECK.—A verbal acceptance or promise to pay a check or bill of exchange may be enforced. Such undertaking is not within the statute of frauds.
2. SAME—CONSTRUCTION OF STATUTE.—The English and American courts having decided that such acceptances were not within the statute of 29 Car., II, Cap. 3. prior to its adoption in this State the presumption is that it was intended that it should here receive the same construction.

APPEAL from Bexar.   Tried below before the Hon. George H. Noonan.

The opinion states the case.

*Oscar Bergstrom,* for appellant, cited Lemmon v. Box, 20 Texas, 329; 1 White & Willson's Civil Cases, secs. 753, 754.

*Shook, Dittmar & Vander Hoeven,* for appellee, cited Revised Statutes, 2464; Hill v. Frost, 59 Texas, 25.

STAYTON, CHIEF JUSTICE.   This action was brought in justice court and by appeal taken to the district court.

The appellant had sold hides to Croll & Hansen, who drew on the appellee for payment therefor the following instrument:

"No. 378.                 .        SAN ANTONIO, Texas, 9–21, 1886.
George Schroeder:—Pay to William Neumann one hundred and seventy dollars.   (Not negotiable.)
$170.00.                                CROLL & HANSEN."

The evidence in the case is as follows: "My name is William Neumann.   I am plaintiff in this cause.   On or about the twenty-first of September, 1886, Croll & Hansen were indebted to me in the sum of one hundred and seventy dollars ($170) for hides sold and delivered to Croll & Hansen, in payment whereof Croll & Hansen gave me the following order:

"No. 378.                  SAN ANTONIO, Texas, 9–21, 1886.
George Schroeder:—Pay to William Neumann one hundred and seventy dollars.   (Not negotiable.)
$170.00.                                CROLL & HANSEN."

"On the twenty-second day of said month, or next day after it was given to me, I presented it to George Schroeder, and he told me he was very busy then, buying cotton, and said 'come back this evening.'   In the evening I presented the order to him again and he said, 'you seem to be terrible anxious about it. It is good and would be if it was for three hundred and seventy dollars.   Come in the morning and I will give you a check for it or the money.   You can not use a check this evening, anyhow.'   Next morning I called upon George Schroeder again and he laughed at me and said:   'Croll & Hansen are busted;

I will not pay that order; but if you will find Hansen and bring him to me I will pay you two hundred dollars.' George Schroeder then refused to pay said order and has not paid the same or any part of it since that time.

"I delivered the hides to Croll & Hansen. I have not sold any of the hides, for which the order is given to George Schroeder. Croll & Hansen are here now, and have been for some time. I did not present it to them for payment because I had nothing to do with them. I looked to George Schroeder for payment of the order, because he had accepted it. George Schroeder did not accept the order in writing, nor did he give me any writing about the matter. George Schroeder said that Croll & Hansen were shipping a car load of hides, but I knew nothing about it. Schroeder did not tell me he had no funds with which to pay the order; nor that as soon as Croll & Hansen had shipped the hides and realized the money on them, he would pay me. If he had told me that I had to wait for payment of the order until he realized on the hides, I would not have waited; but could have protected myself by attachment of Croll & Hansen's hides or otherwise. George Schroeder was backing Croll & Hansen. I don't know what arrangement there was between them. I generally collected my money from Croll & Hansen on the last or first of the month. I got it this time on the twenty-first, because I wanted the money. I did not know they were going to fail.

"I am a butcher by profession, and the amount for which the draft is given was due me for hides delivered to Croll & Hansen daily. I had been selling them hides for several months before that, and they were always paid by giving orders on ;eorge Schroeder, as was done in this case, and George Schroeder had always paid them."

The instrument drawn by Croll & Hansen is the basis of this action, and it was admitted in evidence over the objections of the appellee. The cause was tried, on the evidence here given by the court, and a judgment was rendered in favor of the defendant.

There are no conclusions of fact and law found in the record, but the briefs for both parties concede that the action of the court was based on a holding that a verbal acceptance or promise to pay the draft was not binding on the appellee, because within the statute of frauds, which provides that "a promise to answer for the debt, default or miscarriage of an-

other," must be in writing, signed by the party to be charged therewith.

There are many cases holding that a verbal acceptance or promise to pay a check or bill of exchange may be enforced when made in a State having a statute similar to that in force in this State.

The following English and American cases so hold: Lumley v. Palmer, 2 Str., 1000; Windle v. Andrews, 2 B. and A., 699; Sproat v. Mathews, 1 Tennessee, 185; Miln v. Prest, 4 Campbell, 395; Fairlee v. Keeling, 3 Bing., 308; Jarvis v. Wilson, 46 Connecticut, 90; Mason v. Dousay, 35 Illinois, 424; Sturgis v. Bank, 75 Illinois, 596; Leonard v. Mason, 1 Wend., 524; Williams v. Winans, 2 Green, 341; Walker v. Lide, 1 Rich., 251; Grant v. Shaw, 16 Massachusetts, 343; Edson v. Fuller, 2 Foster, 186; Barnett v. Smith, 10 Foster, 265; Fisher v. Beckwith, 19 Vermont, 34; Stockwell v. Bramble, 3 Indiana, 428; McCutchen v. Rice, 56 Mississippi, 458; Spaulding v. Andrews, 48 Pennsylvania State, 412; Wells v. Brigham, 6 Cush., 6; Dunavan v. Flynn, 118 Massachusetts, 539; Cook v. Baldwin, 120 Massachusetts, 318; Dull v. Bricker, 76 Pennsylvania State, 260; Pierce v. Kitbridge, 115 Massachusetts, 375.

Elementary authorities to same effect: Chitty on Bills, 288; 2 Parsons on Bills, 285; Byles on Bills, 237; 3 Kent, 83; 1 Daniel on Negotiable Instruments, 504; Edwards on Bills, 409.

The English and American cases here cited were decided in jurisdictions within which the fourth section of the the statute of 29 Car. II, chap. 3, was in full force and many of them expressly, and all necessarily, hold that the statute has no application to a verbal acceptance or promise to pay a check or bill of exchange.

Notwithstanding the existence of the statute known as the statute of frauds, on July 2, 1821, a statute was enacted by the British Parliament which provided "that from and after the first day of August no acceptance of any inland bill of exchange shall be sufficient to charge any person unless such acceptance be in writing on such bill, or if there be more than one part, on one of said parts." (1 and 2 George IV, chap. 78, sec. 2.)

The ninth section of the statute of 19 and 20 Victoria provides that no oral acceptance of any bill of exchange shall be binding.

In view of the English decisions to which we have referred,

made while the statute of frauds was fully operative, and of the subsequent legislation to which we have referred, we can not avoid the conclusion that this legislation was deemed necessary to render verbal acceptances or promises to pay checks and bills of exchange invalid; for if such acceptances or promises to pay had been deemed within the statutes of fraud the subsequent legislation expressly made applicable to that matter was unnecessary.

The English courts had decided that such acceptances and promises to pay were not within the statutes of 29 Car. II; chap. 3, and hence the necessity for the subsequent legislation.

In several of the States of this Union, in which the fourth section of the statute of 29 Car. II, is in force, statutes have been passed expressly requiring acceptances to be in writing. This illustrates the common understanding that such promises were not within the statute of frauds.

Such being the construction of the statute of frauds by the English and American courts prior to its adoption in this State the presumption is that it was intended it should here receive the same construction which had been given to it elsewhere.

Distinguished elementary writers have questioned the correctness of the construction placed on the statute of frauds, and courts have regretted the ruling, but still followed it. (1 Reed on Statute of Frauds, 59–63; Brown on Statute of Frauds, 174.)

It seems to us that verbal acceptances, in many cases, come within the evil which it was the purpose of the statute of frauds to prevent; and, were the question one that we felt at liberty to consider solely in the light of the evil intended to be remedied by the statute, we would be much inclined to give it a broader application than do the decided cases.

A statement of the grounds on which that statute has been held to have no application to verbal acceptances or promises to pay would serve no useful purpose.

They will be found stated in the cases and by the elementary writers to which we have referred.

The instrument made the basis of this action was not negotiable, nor was it necessary that it should be presented for acceptance, but under the statutes of this State, this is unimportant in considering the effect of the verbal promise to pay made by the appellee.

We are of the opinion, under the evidence, and the presumptions to be drawn from it, that the appellant was entitled to a judgment; and, if there were facts which would have defeated that right, under any of the decided cases, the appellee should have shown them.

If the Legislature be of the opinion that verbal acceptances or promises to pay bills of exchange and like instruments ought not to be sustained, a statute so declaring will doubtless be enacted; but, in the absence of such a statute, the courts are not authorized to depart from what seems to be the settled construction of the statute of frauds in order to reach what may seem to be an evil that another and perhaps better construction would have reached.

The judgment of the district court will be reversed and here rendered for the appellant.

*Reversed and rendered.*

Opinion delivered May 29, 1888.