MILMO NATIONAL BANK v. T. D. COBBS, TRUSTEE, ET AL.

Decided December 16, 1908.

1.—Banks and Banking—Bill of Exchange—Acceptance.

A written promise by the drawee to the drawer to accept an existing bill of exchange, is not binding on the drawee as an acceptance unless such promise was communicated to the holder or purchaser of the bill and formed an inducement to the purchase of the same. This has reference alone to written acceptances not written on the face of the bill.

2.—Same.

A bill of exchange was drawn by one bank upon another; the party who bought the bill, but who was not the payee in the same, presented it to the drawee for acceptance, and said bank issued a certificate of deposit in favor of the payee named in the bill; it was then noticed that the payee had not endorsed it; the cashier of the drawee wrote on the bill that, on return properly endorsed it would be credited to the payee, and returned the bill to the holder and owner of the same for the purpose of having him obtain the endorsement of the payee; the attention of the drawee's cashier was then called to the fact that the bill was stamped "paid," to which the cashier replied that no change was desired, that it was all right as the bill had already been credited to the payee. Held, the action of the drawee bank was a valid acceptance of the bill both verbally and in writing.

3.—Same—Bill of Exchange—Acceptance—Effect—Estoppel.

The acceptor of a bill of exchange becomes the principal debtor and is primarily liable for the payment of the same. He is estopped to deny that he has funds of the drawer in his hands with which to pay the same.

4.—Same—Same—Delay in Presentation.

After a bill of exchange has been accepted by the party on whom it is drawn, delay in presenting the same for payment, short of the statute of limitation, will not affect the liability of the acceptor. The subsequent insolvency of the drawer is no defense.

5.—Action—Venue—Parties—Bill of Exchange.

If one who is a proper or necessary party defendant resides in the county in which the action is brought, then other interested parties who reside in other counties may be joined with him as defendants. An acceptor of a bill of exchange is at least a proper party to a suit upon the same against the drawer.

6.—Suit by Trustee—Parties.

In suits by or against a trustee for the recovery of trust property, the beneficiary is a necessary party.

Vol. LIII. Civil—1.

**7.—Bill of Exchange—Consideration—Pleading.**

In a suit by one in the capacity of trustee against the acceptor and drawer of a bill of exchange after the bankruptcy of the drawer, it is necessary to allege and prove that the beneficiary obtained the bill of exchange for value and in good faith.

**8.—Same—Acceptance—Certification—Distinction.**

An acceptance of a check, draft or bill of exchange places the acceptor in the position of principal debtor but does not release the drawer; a certification of such paper makes the party certifying the same, the principal and only debtor.

**9.—Bill of Exchange—Ownership—Venue.**

The purchaser of a bill of exchange remains the owner of the same until it is delivered to and accepted by the payee and, hence, may maintain an action upon the same against the drawer and acceptor in the domicile of either.

**10.—Evidence—Hearsay—Conclusion of Witness.**

In a suit against an insolvent drawer of a draft and the acceptor of the same, it was error, because hearsay and involving a conclusion of the witness, to permit the plaintiff to testify, in substance, that the cashier of the insolvent drawer told the plaintiff that he (the cashier) had heard from the bank on which the draft was drawn, and that it had been "arranged," from which the witness understood the cashier to mean that the accepting bank had done as the plaintiff requested.

**11.—National Bank—Insolvency—Authority of Bank Examiner.**

In a suit against a national bank as the acceptor of a draft drawn by another national bank which afterwards became insolvent and was taken charge of by a bank examiner, a telegram from said examiner to the accepting bank to withhold payment of outstanding drafts, was properly excluded. Such evidence could not affect the liability of the defendant bank.

Appeal from the 37th Judicial District, Bexar County. Tried below before Hon. E. Dwyer.

*Atlee & Atlee,* for appellant.—The court erred in sustaining plaintiff's exception to the sworn plea of privilege of this defendant and in not overruling the same—it appearing that such plea was sufficient and the facts therein stated were admitted to be true, and the judgment of the court upon the plaintiff's exceptions should have been rendered accordingly in favor of this defendant upon its plea of privilege. Act 30th Leg., chap. 133, Plea of Privilege; Rev. Stat., art. 1194; Groos v. Brewster, 55 S. W., 590; Commercial Nat. Bk. of Beeville v. First Nat. Bk. of Cuero, 97 Texas, 536; Fidelity Dep. Co. of Md. v. Nat. Bk. of Com. of Dallas, 106 S. W., 782; Henrietta Bk. v. State Bank, 80 Texas, 648; 2 Dan. on Neg. Ins., secs. 1601a, 1604, 1605, 1607.

The court erred in overruling the plea in abatement of this defendant, raised by demurrer, and in not sustaining the same—because of the improper joining of this defendant with the Woods National Bank as defendant, there being no privity of contract and no promise, obligation or undertaking of this defendant making it jointly liable with such codefendant. Texas Mex. Ry. Co. v. Lewis, 99 S. W., 577; Texas & Pac. Ry. Co. v. Mangum, 68 Texas, 342; Kansas C., P. & G. Ry. Co. v. Bermea Land & L. Co., 54 S. W., 324; Weekes v. Sunset B. & T. Co., 56 S. W., 243.

The court erred in failing to sustain the sworn plea in abatement of this defendant, the testimony showing that W. F. Woods, Don A. Bliss, Esq., and other parties were interested in the subject matter of the suit, and are necessary and proper parties.

An action based on the certification of a bill of exchange not made at the instance of the drawer, but at the instance of the holder thereof, can not be maintained by the holder against the drawer of such bill of exchange. The act of certification makes the party certifying alone responsible to the holder for the payment of said bill of exchange. Henrietta Bank v. State Bank, 80 Texas, 648; Goshen Bank v. Bingham, 16 Am. St., 765 (118 N. Y., 349); Lynch v. First Nat. Bank, 1 Am. St., 803 (107 N. Y., 179); 2 Dan. Neg. Ins., secs. 1601a, 1604.

The court erred in overruling the second special exception of this defendant, and in not sustaining the same, the alleged act of certification being without authority, not binding on this defendant, ultra vires, null and void, and without consideration; and it further appearing that such alleged act of certification was revoked, and that the payee of the draft or bill of exchange at no time became the bona fide holder thereof without notice. Commercial Bank of Beeville v. Bank of Cuero, 97 Texas, 536; Fidelity & Dep. Co. v. National Bank, 106 S. W., 782, and cases there cited; Gibbs Nat. Bank v. Citizens Bank, 108 S. W., 776; 2 Dan. Neg. Ins., sec. 1607; U. S. Rev. Stat., sec. 5208.

An action based on an alleged certification of a bill of exchange by a national bank can not be maintained against said bank without an allegation that the drawer had funds on deposit with the drawee at the time of drawing such bill, and such action will not lie against the drawer of the bill where the certification was not procured by the drawer. The action would lie only against the party certifying the bill of exchange. 2 Dan. Neg. Ins., secs. 1601a, 1604, 1607; Goshen Bank v. Bingham, 16 Am. St., 765 (118 N. Y., 349); Lynch v. First Nat. Bank, 1 Am. St., 803 (107 N. Y., 179); Cook v. State Nat. Bank, 11 Am. R., 667 (52 N. Y., 96).

*Cobbs & Cobbs, Don A. Bliss* and *Jno. H. Cunningham,* for appellee.—The Woods National Bank, a resident of Bexar County, Texas, being the drawer of the bill of exchange sued on in this cause, and the appellant bank being the acceptor of said bill of exchange, and appellee being the owner of said bill of exchange, appellee had the right to sue appellant and Morris, the receiver of Woods National Bank, jointly in Bexar County, Texas. Rev. Stats., arts. 312, 1203, 1194, subd. 4; Kildare Lumber Co. v. Atlanta Bank, 91 Texas, 95; Texas & Pac. Ry. Co. v. Mangum, 68 Texas, 342; Lyon v. Dougherty, 26 S. W., 146.

The undisputed testimony showing that appellee purchased and paid for the bill of exchange sued on, and was the owner thereof, and the testimony further showing that no other person had any such interest therein as would require him to be made a party to this suit, the trial court did not err in failing to sustain the plea in abatement filed by appellant. Aldridge v. Pardee, 60 S. W., 789; Thompson

v. Cartwright, 1 Texas, 87; McMillan v. Croft, 2 Texas, 397; Knight
v. Holloman, 6 Texas, 153; Wimbish v. Holt, 26 Texas, 674; Price
v. Wiley, 19 Texas, 142; Smith v. Wingate, 61 Texas, 54.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by T. D.
Cobbs, trustee, against appellant and H. N. Morris, receiver for the
Woods National Bank, to recover the sum of $8,360.22, and damages
alleged to be due by reason of the following facts: That said trustee had a contract with J. R. Monroe and Jacobo C. Guerra for the
purchase of 5000 acres of land in Starr County, and Monroe and
Guerra had a contract to purchase the same land from one Jesus
Maria Yzaguirre, and it was agreed between the trustee and the
two parties named that the trustee should pay the purchase price
of the land to Yzaguirre through the Milmo National Bank, in
Laredo, Texas. That on October 24, 1907, the trustee purchased
from Woods National Bank in San Antonio, Texas, a bill of exchange
for the sum of $8,360.22, drawn on appellant and payable to the
order of Yzaguirre, which bill of exchange was given by the trustee
to one John Thaison with instructions to place it to the account of
the said Yzaguirre in appellant's bank, and to procure from it a certificate that the amount would be paid to Yzaguirre, and that said
Thaison presented the bill of exchange to appellant and requested
that the amount of the same be placed to the credit of Yzaguirre,
and asked for and received a certificate showing that the money
would be paid to him. It was further alleged that at the same
time attention was called to the fact that Yzaguirre had not endorsed the bill of exchange, and Thaison suggested that he would
take the paper to Yzaguirre and have it endorsed and then the
cashier wrote on it: "On return properly endorsed will be credited
to the account of Jesus Ma. Yzaguirre, 10-25-07," and took back the
certificate of deposit and gave the bill of exchange to Thaison, who,
after leaving the bank, found that it had been stamped "paid." He
returned to the bank and asked about it and was told by Mussett,
the assistant cashier, that no change was desired, that it was all right
as the bill of exchange had already been credited to Yzaguirre. That
said Thaison then proceeded with the bill of exchange to Rio Grande
City, near the city of Camargo, Mexico, where Yzaguirre resided,
but, being absent from his home, Thaison did not see him, and before he returned Woods National Bank had suspended and been
placed in the hands of a receiver, and appellant notified Yzaguirre
that it would not pay the bill of exchange, and Yzaguirre then refused to convey the lands to the trustee. That several days after
the bill of exchange was issued the trustee was informed by Woods
National Bank that the bill of exchange would be paid by the Milmo
National Bank. It was alleged that when the bill of exchange was
presented by Yzaguirre to appellant that it endorsed on the back of
the paper: "Woods National Bank having failed, payment is refused
by order of the Bank Examiner in charge." That when the bill of
exchange was issued by Woods National Bank it notified appellant
and in reply appellant wrote: "We have your favor of the 24th
and note that you have drawn on us for $8,360.22 in favor of Jesus

Ma. Yzaguirre. We shall take pleasure in paying draft on its presentation."

Woods National Bank, on January 7, 1908, answered by general demurrer and general denial, and on same date appellant filed its plea of privilege to be sued in Webb County, which was verified by the affidavit of its cashier, M. T. Cogley. On February 17, 1908, pleas in abatement were filed by appellant, on the grounds that no privity of contract was shown between the two banks, that the trustee did not disclose for whom he was trustee, and that W. F. Woods and Don A. Bliss were proper parties and should be joined in the suit. On same day appellant filed its defenses, without waiving its pleas of privilege and pleas in abatement. In that answer were special exceptions to the petition on the following grounds:

"1st: Because no consideration is alleged whereby this defendant was bound to honor and pay the bill of exchange mentioned in said petition, and it is not alleged that the Milmo National Bank had funds of the Woods National Bank against which the same was drawn.

"2d. Because the alleged act of certification of said bill of exchange was not binding on the Milmo National Bank, but is *ultra vires,* null and void, it not being also alleged that the Woods National Bank had on deposit with the Milmo National Bank, at the time of such alleged certification, an amount of money equal to the amount of money specified in said bill of exchange; and it does not appear that such alleged act of certification proceeded upon and was for any consideration; and because it appears that such alleged act of certification was revoked before the said bill of exchange was delivered to the payee named therein; and because it does not appear that the said payee, upon delivery of said bill of exchange to him, became a bona fide holder thereof without notice, but the contrary appears in the allegations of the petition.

"3d. Because the allegations on page 4, beginning, 'Immediately after the said Woods,' and ending on page 5, with, 'Would not be paid,' are insufficient to show any promise made to plaintiff to pay said bill of exchange, or any act of this defendant from which the cause of action sued on arose, and it is not alleged that the alleged letter of this defendant was exhibited to plaintiff, nor when.

"4th. Because it is not made to appear how this defendant has become bound to pay to plaintiff the full amount of said bill of exchange or any amount, nor how the plaintiff has the right to recover of the defendant the said sum of money or any sum of money under the laws of the United States, as alleged on page 5 of plaintiff's petition, beginning: 'Your petitioner further shows,' down to and including 'United States'—it not being alleged that the Woods National Bank had funds on deposit with this defendant at the time such alleged cause of action arose, or at any time; and it further appearing that if any liability arose by reason of the alleged act of certification, such liability was to the payee named in the instrument certified, and not to the plaintiff.

"5th. Because the petition does not show what money, if any, or what consideration, if any, was paid by plaintiff on the purchase of

said bill of exchange; nor does it show when, nor how the money was placed in the Woods National Bank, as alleged, nor how much money was so placed.

"6th. Because it is not made to appear how the refusal of this defendant to pay said bill of exchange caused the petitioner to lose the purchase and conveyance of lands, as alleged on page 6 of the petition, ·it not being alleged that this defendant made any promise to plaintiff that it would pay said bill of exchange."

Exceptions to the pleas of privilege and the pleas in abatement were sustained and the special exceptions of appellant were overruled by the court, and no jury being demanded, the court heard the facts and rendered judgment for the trustee in the sum of $8,360.22 against the receiver and appellant.

There is some diversity of opinion between the courts of the United States and England as to the effect of a written promise to the drawer to accept an existing bill of exchange, which was not communicated to the holder or purchaser of the same, and which, therefore, could not have formed any inducement for the purchase of the bill. In most American cases the liability of the acceptor, in case of a written acceptance, is measured by the acceptance having been an inducement to the taking of the bill; in the English cases it is held to be immaterial. The view generally accepted in the United States, however, is that unless the holder took the bill on account of the promise it is not an acceptance. (Coolidge v. Payson, 2 Wheat., 66; Schimmelpennich v. Bayard, 26 U. S., 264; Boyce v. Edwards, 29 U. S., 111; Exchange Bank v. Rice, 98 Mass., 288, and 107 Mass., 37.) The rule sustained by the cases cited we believe to be the reasonable and proper one, and we conclude that as the letter written by appellant to Woods National Bank did not figure as an inducement to the purchase of the bill of exchange by T. D. Cobbs, the trustee, it should not have figured in the decision of the case. The rule mentioned applies to written acceptances not written on the face of the paper, because it is the desire of the law to restrict within the narrowest limits the doctrine of liability to an action on negotiable paper by reason of anything not appearing on the face of the paper itself.

After the check had been drawn, however, and delivered to the trustee, to whom it belonged, he placed it in the hands of his agent, Thaison, for presentment to appellant, and there was an acceptance of the draft both verbally and in writing, hereinbefore copied. That presentment was a legal one. It was made by the lawfully authorized agent of the rightful holder, and if he had not been, the presentment would inure to the benefit of the rightful holder, whoever he might be. (Tiedeman, Comm. Paper, sec. 212.) The verbal acceptance alone was sufficient to bind the acceptor. (Neuman v. Shroeder, 71 Texas, 81; White v. Dienger (Texas Civ. App.), 25 S. W., 666.)

The acceptance had the effect of an admission upon the part of appellant that it had funds of the drawer with which to pay the amount of the bill, and the acceptor became the principal debtor and primarily liable for payment of the bill of exchange according·

to the terms of the contract therein evidenced. (Stark v. Alford, 49 Texas, 260.) As between the holder of the bill and the acceptor, the latter is estopped from denying that he has funds of the drawer with which to pay the bill. As said by the Supreme Court of the United States in Raborg v. Peyton, 2 Wheat., 385: "An acceptance is not a collateral engagement to pay the debt of another; it is an absolute engagement to pay the money to the holder of the bill; and the engagements of all other parties are merely collateral. *Prima facie,* every acceptance affords a presumption of funds of the drawer in the hands of the acceptor, and is, of itself, an express appropriation of those funds for the use of the holder. The case may, indeed, be otherwise; and then the acceptor, in fact, pays the debt of the drawer, but as between himself and the payee it is not a collateral but an original and direct undertaking."

In the case of Hortsman v. Henshaw, 11 How., 177, Chief Justice Taney said: "Whenever the drawer is liable to the holder, the acceptor is entitled to a credit if he pays the money; and he is bound to pay upon his acceptance, when the payment will entitle him to a credit in his account with the drawer. And if he accepts without funds, upon the credit of the drawer, he must look to him for indemnity, and can not on that ground defend himself against a *bona fide* indorsee. The insolvency of the drawer can make no difference in the rights and liabilities of the parties."

The enunciated rule is founded on that principle of right and justice which estops a party from escaping liability where he has caused another to lose some right or vantage ground by his acts, words or conduct. Had appellant informed the agent of the trustee that it had no funds belonging to Woods National Bank and could not pay the draft to Yzaguirre, he could, at the time, most probably have saved himself from loss by demanding payment of the drawer, or at least it would have given him a chance to protect himself from loss. On the other hand, appellant promised to pay the draft and lulled the trustee into security until the failure of the drawer on November 6, 1907. As said by a text-writer: "Any language . . . whether verbal or written, employed by an officer of a banking institution whose duty it is to know the financial standing and credit of its customers, representing that a check drawn upon it is good and will be paid, estops the bank thereafter as against a *bona fide* holder of the check from denying the want of funds to pay the same." Bigelow, Estoppel, p. 504.

What the cashier and his assistant told Thaison and the endorsement on the check were equivalent to an acceptance of the check. It was a representation that the check was good, that appellant had funds of the drawer to meet it and would pay it when Yzaguirre wrote his name on the back of it. It was an absolute engagement to pay the amount of the draft to the person for whom it was intended. The debt thereupon became that of appellant. It had satisfied the agent of the trustee that the bill was good and would be paid and thereby prevented him from taking steps to protect himself until it was too late. Delay in the presentation could not figure in the case because the debt having become that of appellant would

remain in force until barred by some statute of limitations. (Farmers & M. Bank v. Butchers & D. Bank, 16 N. Y., 128; Meads v. Merchants Bank, 25 N. Y., 143; Irving Bank v. Wetherald, 36 N. Y., 335.)

It follows from the discussion of the law of the case that the petition was not subject to the general or special exceptions urged against it on the ground that it did not state a cause of action. Under the allegations it was unnecessary to allege that appellant had funds belonging to Woods National Bank. It was utterly immaterial whether it had such funds or not. It was not necessary to allege that the trustee was induced to buy the exchange from Woods National Bank, because that was not the ground of appellant's liability. It was liable for its acceptance of a check in the hands of the holder whereby he was prevented from obtaining his money from the issuing bank.

There can be no doubt that appellant was a proper party defendant to the suit on the bill of exchange. It is always proper to join the acceptor of any bill of exchange or any other principal obligor in any contract, with anyone else liable thereon. This rule is statutory. Rev. Stats., art. 1203. It would seem from article 1204 that the acceptor is a necessary party in a suit against the drawer unless certain conditions therein named exist.

Appellant being a proper, if not necessary party, the plea of privilege was properly overruled. Texas & Pac. Ry. v. Mangum, 68 Texas, 342. In that case the court in construing the fourth exception to the general law that a person must be sued in the county of his residence, said: "This, however, does not mean that an inhabitant of this State may be sued in a county other than his residence whenever a plaintiff, without sufficient ground, may join with him as a defendant some person who may be a resident of the county in which the action is brought. It means simply that if one who is a proper or necessary party defendant resides in the county in which the action is brought, that then other defendants may be joined with him who reside in other counties." The case of Mathonican v. Scott, 87 Texas, 396, is also in point.

The ninth assignment of error brings in review the action of the court in overruling the exception to the petition on the ground that it failed to state the names of the beneficiaries who were represented by the trustee, and we think the assignment should be sustained. The well established rule is that in suits by or against the trustee for the recovery of trust property, the beneficiary or *cestui que trust* is a necessary party. (Hall v. Harris, 11 Texas, 300; Huffman v. Cartwright, 44 Texas, 296; Boles v. Linthicum, 48 Texas, 224; Ebell v. Bursinger, 70 Texas, 120; Cotton v. Coit, 88 Texas, 414.) The reason for the rule is the prevention of a multiplicity of suits and that there may be a complete and final decree between all the parties interested. Another reason might be offered in a case like this, and that is that the disclosure of the names of the beneficiaries might open up defenses for the defendant that would not otherwise be practicable or proper. A different case might be developed if the names of the beneficiaries are disclosed. Every one interested in

the suit should be made a party in order that there may be a full and fair investigation as to the relations of each one to Woods National Bank, to the receiver, to the trustee, to the appellant, and to the subject matter. In order to recover, the beneficiaries must appear to have obtained the draft for value and in good faith, for fraud will vitiate anything, and unless it fully appears that the beneficiaries, represented by the trustee, actually parted with something of value for the check, and that the purchase was not a mere bookkeeping entry (Daniel Neg. Instr., sec. 779b), the beneficiaries can not recover any sum from appellant. Its liability is based on the proposition that the beneficiaries have been placed in a worse position by the failure to pay the check drawn by Woods National Bank. Not only did appellant except to the petition on the ground that the beneficiaries in the trust were not made parties, but by a plea, supported by affidavit, suggested the names of parties who were beneficiaries and asked that they be made parties. The court overruled exception and plea.

In this case the holder of the check did not take a certification of the check as payment of the check and thereby release the drawer, but merely presented it and received the assurance that it would be paid when properly endorsed. Nothing was received in lieu of payment of the check. The check or draft had been bought by the trustee and when delivered to him was his property. He could have returned it to the drawer and have demanded repayment of his money. It was his, although drawn in favor of Yzaguirre, and at the time it was presented to appellant it was still his property, and all he obtained from appellant was a promise to pay the money if Yzaguirre would endorse it. It was a mere acceptance, and after it was made the trustee still had his recourse on Woods National Bank and could have refrained from giving the check to Yzaguirre and obtaining his endorsement. Before the check ever reached Yzaguirre's hand he had been notified that the check would not be paid, and he refused to take it and refused to convey the lands for which it was to pay. There was no certification of the check, which would have released the drawer and have made appellant the principal and only debtor, but there was merely an acceptance of it which placed appellant in the position of principal debtor but did not release the drawer. The trustee at the time the check was presented to appellant could not demand payment, for appellant at that time was under no obligation to pay it, and he could obtain only what he did obtain, a promise to pay in case the paper was indorsed. In other words, he obtained an acceptance of his paper and not a certification. The first does not release the drawer; the latter does. The drawer and acceptor were jointly liable to the trustee and the suit could be maintained in the domicile of either.

The facts were fully stated in the petition and showed a liability on the part of appellant to the trustee, and a direct allegation of a promise to pay was not necessary. The only parts of the letter from W. F. Woods to Cogley, appellant's cashier, that were relevant were those referring to the fact that the draft had been drawn and that part showing that Woods was interested in the transaction about

the land, but we can see no reason why the whole letter should not have been admitted in evidence. We see no pertinency in the other letters excluded.

The bill of exceptions upon which the twentieth assignment of error is founded does not disclose what Cogley would have testified Yzaguirre said when he presented the draft, and of course this court is unable to ascertain whether his statement was material or not.

It was error to permit the trustee to swear to the statements made to him by W. F. Woods. Such statements could not bind appellant. They were hearsay and involved a conclusion of Woods, as well as of the trustee who was testifying.

The letter from appellant to Woods National Bank was admissible, not as showing an acceptance of the draft, but having been written the day after Thaison presented the draft, it was admissible as corroborative of his statements as to the acceptance.

The statement of Thaison made at Rio Grande City, having been presented to Cogley at Laredo and endorsed except in one particular, was admissible as tending to impeach the evidence of Cogley at the trial, and as an admission on the part of appellant.

The telegram of the bank examiner to appellant after the failure of Woods National Bank was properly excluded, as well as the reply to it. Such evidence could not affect the liability of appellant.

Knowledge of the trustee as to there being no funds of Woods National Bank with appellant to meet the draft could not relieve appellant of the effect of its acceptance of the draft, unless, perhaps, there had been an allegation of conspiracy upon the part of trustee, the beneficiaries, and the officers of Woods National Bank to defraud appellant.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*