## LUMSDEN v. JONES. (No. 1385.)

(Court of Civil Appeals of Texas. Amarillo. June 29, 1918.)

**1. BROKERS ⊂⇒82(1)—IMPLIED PROMISE.**

In suit for reasonable value of services rendered by plaintiff in sale of cattle listed with him by defendant, petition which alleged facts upon which law raises implied promise to pay was sufficient; it being unnecessary, in view of Rev. St. 1911, art. 1819, to allege a promise to pay, which is required under common-law system of pleading.

**2. PLEADING ⊂⇒251 — AMENDMENT — MISNOMER.**

Amendment, entitled "First Amendment of Plaintiff," being intended as a trial amendment for the purpose of supplementing original petition, misnomer and failure to refer to original pleading will not destroy its real character and purpose.

**3. APPEAL AND ERROR ⊂⇒1041(2) — TRIAL AMENDMENT—HARMLESS ERROR.**

In suit on express contract for commission on sale of cattle, permitting plaintiff to file a trial amendment alleging reasonable value of services, though not proper under district and county court rule 27 (142 S. W. xix), was not an irregularity warranting reversal.

**4. APPEAL AND ERROR ⊂⇒882(6) — ESTOPPEL TO ALLEGE ERROR—VARIANCE.**

It being alleged that defendant listed cattle with plaintiff for sale, proof that cattle belonged to a partnership composed of defendant and another will not be held to create a fatal variance; defendant, who personally listed cattle and failed to plead that his partner was jointly liable, being in no position to complain.

**5. BROKERS ⊂⇒82(4) — COMMISSIONS — PLEADING—VARIANCE.**

In action for commission on sale of cattle, that petition alleged that sale was made to R. and H., and proof showed that contract of sale as finally made was to R. and C. Bros., and H. & Sons, held not a fatal variance; the parties to whom sale was made not being material.

**6. BROKERS ⊂⇒88(10) — COMMISSIONS — MISLEADING INSTRUCTION.**

The principal fact issue being whether plaintiff was the procuring cause of sale of defendant's cattle, and there being testimony justifying either conclusion that defendant did or did not interfere to prevent plaintiff from showing the cattle to purchaser, an instruction that, if defendant assisted another broker in the sale, etc., plaintiff was the procuring cause, was misleading.

**7. BROKERS ⊂⇒55(1)—CONSUMMATION OF SALE —INTERFERENCE BY PRINCIPAL.**

Defendant, having employed two brokers and they being engaged in an effort to sell the property to the same person, could not rightly interfere to prevent consummation of sale by one in order to favor the other, although he could render assistance by accompanying the brokers upon inspection of property, boosting the sale by commendation, etc.

**8. EVIDENCE ⊂⇒472(11)—CONCLUSIONS—MATTER IN ISSUE.**

Answer of witness, "Jones was the person who caused me and Mr. Huddleston to buy the steers," being a conclusion as to the very fact in issue to be determined by the jury, objection should have been sustained.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Suit by C. W. Jones against L. Lumsden. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Bean & Klett, R. A. Sowder, and W. H. Bledsoe, all of Lubbock, for appellant. M. Fulton and Percy Spencer, both of Lubbock, and G. E. Lockhart, of Tahoka, for appellee.

BOYCE, J. This suit was brought by appellee, Jones, against appellant, Lumsden, to recover commission alleged to be due for services performed by appellee as broker in procuring a purchaser for certain cattle list-

ed with him by appellant for sale. Such statement of the pleading and facts as is necessary will be made in connection with the questions discussed.

The first five assignments present in various ways objections to the sufficiency of the pleading to support the recovery and are based on the following facts:

[1] Plaintiff sued to recover on an express contract for the payment of commission at the rate of 50 cents per head on 3,330 head of cattle listed with him for sale. During the trial, the plaintiff was permitted by the court to file a pleading which he styled "First Amendment of Plaintiff," which is as follows:

"Defendant having denied an express agreement to pay 50 cents per head for sale of the cattle sold by him, comes the plaintiff and alleges that the reasonable value of the services rendered by plaintiff alleged in the petition, were 50 cents per head, or the sum of $1,665. Wherefore he prays for judgment as before."

The jury found that Lumsden authorized Jones to find a purchaser for his cattle, that Jones was the procuring cause of the sale, that there was no express agreement to pay 50 cents per head commission, and that the reasonable value of the services was 50 cents per head, and judgment was based on the implied promise to pay a reasonable compensation for the services performed under the express listing for sale. Appellant contends that the pleading is insufficient to support such a recovery, because there is no allegation of "promise to pay" in connection with the allegations of reasonable value of the service performed under the contract of enlistment.

[2, 3] Under the common-law system of pleading an allegation of promise to pay or its equivalent would be necessary under the circumstances. 5 C. J. p. 1393. The promise to pay is a fiction, being implied from other facts, and it is said that under the Code practice the petition is sufficient if it alleges the facts upon which the law raises an implied promise. 5 C. J. p. 1395. We believe that this is all that is necessary under our system of pleading. R. S. art. 1819; Milmo National Bank v. Cobbs, 53 Tex. Civ. App. 1, 115 S. W. 345, 346, par. 19; Patton-Worsham Drug Co. v. Drennon, 123 S. W. 705; Cark v. Dyer, 81 Tex. 339, 16 S. W. 1061, par. 5. The amendment was evidently intended to be in the nature of a trial amendment, for the purpose of supplementing the allegations of the original petition. The misnomer, and the failure to refer to the original pleading intended to be supplemented, ought not to destroy its real character and purpose. German Insurance Co. v. Norris, 11 Tex. Civ. App. 250, 32 S. W. 727. The filing of a trial amendment, properly styled and containing proper reference to the supplemented pleading, would not have been really proper. Rule 27 for District and County Courts (142 S. W. xix). However, we do not think these irregulari-

ties ought to reverse the case. Mound Oil Co. v. Heitman, 148 S. W. 1187; American Warehouse Co. v. Ray, 150 S. W. 765.

[4] The sixth, seventh, and eighth assignments are based on the contention that there was such a fatal variance between the allegations and proof as to preclude a recovery. It is alleged that the defendant, Lumsden, listed the cattle with plaintiff for sale. The proof showed that the cattle belonged to a partnership known as Green & Lumsden, composed of Wm. Green and the said Lumsden, and the contract of sale was executed by Lumsden, acting for the partnership. There is no variance between the allegations stated and the proof. Lumsden personally listed the cattle with Jones, and it does not appear that the partnership ownership of the cattle was referred to at such time, nor that Jones knew that the cattle belonged to the partnership. The evidence simply shows that the partner, Green, would be jointly liable with Lumsden, perhaps; but appellant, not having pleaded such facts and asked that Green be made a party to the suit, is in no position to prevent plaintiff from proceeding to enforce the individual liability against himself, simply because some one else may be jointly and severally liable with him. Davis v. Willis, 47 Tex. 162.

[5] A variance is claimed on another ground: The petition alleged that plaintiff, in pursuance of the contract for enlistment, procured Robb, acting for himself and Huddleston, to meet the defendant, and that such procurement resulted in the sale of the cattle to the said Robb and Huddleston. The actual contract of sale as finally made was to Robb and Crocker Bros. and Huddleston & Sons; Robb and Crocker Bros. taking one half of the cattle, and Huddleston & Sons taking the other. The evidence, viewed in its most favorable aspect to the plaintiff, is sufficient to warrant the conclusion that Jones brought Robb and Lumsden together; that there were more of the cattle than Robb wanted to buy alone, and he interested Huddleston in the purchase of the cattle with him, and negotiations for the sale were conducted with Robb and Huddleston. It does not appear that Crocker Bros. or the sons of Huddleston were present at all during such negotiations. Under the contract of enlistment, plaintiff was to procure the sale of the cattle in order to earn his commission. The parties to whom the sale should be made were not material. If plaintiff procured the sale, he earned his commission. The only materiality or necessity for an allegation of the name of the purchasers procured was to identify the transaction. If plaintiff procured Robb as a purchaser, and he, for his own purposes, brought in others as his associates in the purchase, it ought not to affect the plaintiff's right to recover his commission on the sale. It is not claimed that the defendant was in any way mis-

led as to the basis of plaintiff's cause of action. We do not think there was any fatal variance between the allegations and the proof under these circumstances. McClelland v. Smith, 3 Tex. 210.

[6] The principal fact issue in the case was as to whether plaintiff, Jones, or W. G. Russell, another cattle broker, with whom Lumsden had listed the cattle, was the procuring cause of the sale. There is testimony that tends to show that W. G. Russell, having the cattle listed for sale for spring delivery, but with no price on them, on account of defendant Lumsden's desire not to price the cattle so far in advance of the time for their delivery, called them to the attention of Bobb and one of the Crocker Bros., and arranged to take the matter of the sale up with them further, when Lumsden should put his price on the cattle, and at this time the said Robb and Crocker expressed a desire to come to look at the cattle when Lumsden had priced them. There is also an intimation in the evidence that there was some sort of a tacit understanding that the parties were to meet at the Buyers' & Sellers' Convention to be held at Amarillo in the following February. All of the various parties to this transaction were at the Buyers' & Sellers' Convention at Amarillo. Jones first saw Robb, and priced the cattle to him, and introduced him to Lumsden. Soon thereafter Russell also met Robb and Huddleston, and took up the matter of the sale of the cattle with them. Russell took Robb and Huddleston, together with Lumsden, to look at the cattle, and the contract of sale resulted. Jones also offered to take the parties to look at the cattle. The testimony would justify either conclusion—that Lumsden did or did not interfere to prevent Jones from showing the cattle and to prevail on the parties to avail themselves of Russell's services in showing the cattle and closing the trade. Under this state of facts, complaint is made by the ninth assignment of the following charge given by the court at plaintiff's request:

"You are instructed that, where it is brought to the knowledge of an owner that two agents are involved in the sale of his property, the law demands strict neutrality as between them on the part of the owner. Now, if you find from the evidence that C. W. Jones opened negotiations with J. T. Robb for the purchase of the defendant's cattle, and the defendant, with knowledge of this fact, aided or assisted another broker in the sale of the property to the prejudice of C. W. Jones, then you are instructed that he cannot in law take advantage of the services of the second broker in closing the transaction on an issue as to whether the first broker, C. W. Jones, was in fact the procuring cause of the sale."

[7] It is conceded that the first sentence of this charge states the law correctly, but the complaint is to the latter part of it. Lumsden, having employed two brokers and they being engaged in an effort to sell the property to the same person, could not rightly interfere to prevent the consummation of the sale by one in order to favor the other. Edwards v. Pike, 49 Tex. Civ. App. 30, 107 S. W. 586; Bellis v. Hann & Kendall, 157 S. W. 427; Griffith v. Schofner, 184 S. W. 340; Murray v. Miller, 112 Ark. 227, 166 S. W. 539, Ann. Cas. 1916B, 974, and authorities; Mechem on Agency (2d Ed.) pars. 2456, 2457. This does not mean, however, that when one of the brokers brings forward the purchaser the owner must not lend any assistance in the aid of such broker's efforts, such as accompanying them upon inspection of the property, boosting the sale by commendation, etc., and finally by executing the contract of sale when the buyer's consent to purchase has been obtained. The owner has an interest of his own to subserve, to wit, the sale of his property, and he should not, we think, be precluded from aiding in the sale either party who proffers a purchaser. Assistance of this kind might, of course, be to the prejudice of the other broker, who might have otherwise effected the sale; but such assistance could not properly be said to be an interference with the rights of the other broker. The charge referred to was calculated to mislead the jury as to the law applicable to the decision of the most vital issue in the case. We do not think that the error was invited by the charges requested by appellant.

The requested charge, made the basis of the tenth assignment, correctly states the law; but this was sufficiently covered by other charges given.

We overrule the eleventh assignment. The transactions referred to, which took place after the consummation of the sale, throw no light on the issue of fact as to who was the procuring cause of the sale, and have no weight, we think, as tending to impeach the testimony of the witness Robb.

[8] The answer of the witness Robb, to the effect that "Jones was the person who caused me and Mr. Huddleston to buy the steers," was a conclusion as to the very fact in issue to be determined by the jury, and objections urged thereto should have been sustained. We therefore sustain the thirteenth assignment, and for the same reason also sustain the fifteenth assignment.

We overrule the twelfth, fourteenth, and sixteenth assignments. The answer made to the interrogatory referred to in the sixteenth assignment was responsive, and, even if the other answers to the other interrogatories referred to in these assignments were not responsive, this answer reiterated the same statement, and would render harmless any error in the admission of the other answers.

For the reasons stated, the judgment is reversed, and the cause remanded.

HUFF, C. J., not sitting.