**FIRST NAT. BANK OF LITTLEFIELD et al. v. NEEL. (No. 3061.)**

Court of Civil Appeals of Texas. Amarillo.
Oct. 17, 1928.

E. A. Bills and E. S. Rowe, both of Littlefield, for appellants.

Bledsoe & Crenshaw, of Lubbock, for appellee.

HALL, C. J. The appellee filed this suit to recover the value of certain bales of cotton, which he sold to W. B. Dillard, a cotton buyer, and for which he was paid by a draft

drawn on the Littlefield State Bank. The plaintiff and Dillard resided in Crosby county, where the sale was made. The Littlefield State Bank had its domicile in Lamb county. J. Kahn & Co. a corporation was made a party by the original petition.

The case was tried upon the third amended original petition. In the first amended original petition, appellee discontinued his suit as to J. Kahn & Co., and complained only of W. B. Dillard and the Littlefield State Bank. In the second amended original petition, filed on May 10, 1927, the First National Bank of Littlefield was, for the first time, made a party to the suit. In the third amended original petition, appellee alleged:

That he was a resident of Crosby county, Texas; that W. B. Dillard was a resident of Crosby county, Texas, and that both the Littlefield State Bank and the First National Bank of Littlefield were banking corporations and residents of Lamb county, Texas; that on or about December 9, 1925, plaintiff was the owner of and had in his possession a certain lot of 45 bales of cotton at Lorenzo, in Crosby county, Texas, and that the defendant Dillard offered to purchase the cotton from appellee and pay for same in cash; that appellee agreed to sell the cotton for cash, and Dillard, in payment for the cotton, gave him a check or draft on the Littlefield State Bank for the purchase price of the cotton in the sum of $2,916.70; that the cotton was delivered by appellee to Dillard with the understanding that the check or draft would be paid by the Littlefield State Bank on presentation thereof, but that said check or draft, though presented with promptness, was turned down and payment refused by the Littlefield Bank; that, at the time the draft was presented to the state bank, Dillard had on deposit with said bank sufficient funds to pay said check or draft.

That Dillard disposed of said 45 bales of cotton and deposited the proceeds thereof, an amount exceeding that of the check or draft given to appellee, in the Littlefield State Bank, with the avowed purpose of taking care of appellee's check or draft on presentation, and that said deposit was dedicated to the specific purpose of paying appellee's draft; that the state bank knew, or should have known from the facts in its possession, that said deposit had been dedicated to the specific purpose of paying for the cotton, the proceeds of which were represented by the deposit; that, notwithstanding such facts, the state bank converted said special deposit to its own use and benefit; that Dillard was a dealer in cotton, and the state bank was financing his operations, and knew that he would buy cotton and then sell the same, using the proceeds from the sale to pay for the cotton which he bought, and knew that the deposit in question represented the proceeds of the particular cotton bought from appellee; that it was understood between Dillard and the state bank that a particular form of draft, such as was drawn in this case, should be given by Dillard. to the seller of the cotton, and that same would be paid by the bank on presentation, and that if, in the meantime, the cotton was not sold, so that the proceeds would take care of same, the bank would hold the cotton as security, and that the giving of the draft in this case, and the refusal of the bank to pay the draft, while using the proceeds of the cotton, constituted a fraud upon the plaintiff on the part of the said Dillard and the said state bank.

That after the institution of this suit, and after the defendant the Littlefield State Bank had appeared and answered herein, the Littlefield State Bank transferred and assigned to the First National. Bank of Littlefield all of the valuable assets of the Littlefield State Bank, the exact amount in value of which assets were wholly within the knowledge of the Littlefield State Bank and the. First National Bank of Littlefield, but appellee averred on information and belief that the amount in value of the assets largely exceeded the amount of plaintiff's claim herein; that the First National Bank of Littlefield received all of said assets of the Littlefield State Bank in consideration of the assumption by said National Bank of all the debts and obligations of the state bank; that, if the national bank did not expressly assume said debt, it nevertheless received all or the major portion of the assets of the state bank, treated the same as its own, and commingled them with its own assets, and paid no consideration for such assets, except its express or implied assumption of the debts of the Littlefield State Bank; that, at the time such transfer was made by the state bank to the national bank, the state bank was insolvent, and immediately after the transfer of such assets the state bank ceased to carry on the banking business, and had, to all intents and purposes, ceased to exist and function as a corporate entity; that the act of the Littlefield State Bank, in transferring to the national bank all or the major portion of its assets, constituted in effect an attempted general assignment by said state bank, in violation of the statutes of this state; that at the time of such assignment the national bank was well aware of and acquainted with the failing and insolvent condition of the state-bank, and the amount in value of its assets, and knew that it was receiving all or the major portion of its valuable assets, leaving practically no assets of any value with which to satisfy the creditors of the Littlefield State Bank; that by reason of such facts the national bank took the assets of the state bank subject to and impressed with the trust in favor of the creditors of the state bank, such as this plaintiff; and that, having commingled such assets with its own, so that they could not be separated and distinguished, it had become bound and obligated to the appellee to

pay the debt and obligation owing to appellee by the Littlefield State Bank.

Upon these allegations, appellee prayed judgment against W. B. Dillard, the Littlefield State Bank, and the First National Bank of Littlefield, Tex. Both banks filed their pleas of privilege to be sued in Lamb county, and also filed pleas in abatement, all of which were overruled.

On September 29, 1927, the state bank filed its second amended original answer, consisting of a general demurrer, several special exceptions, and a general denial. It specially denied that the deposit was made by Dillard as a special deposit, for the special purpose of paying the check which Dillard gave to the plaintiff, alleging that the deposit was made in the regular course of business, and at that time the defendant Dillard was greatly indebted to said state bank by reason of certain overdrafts which were covered by said deposit.

On May 30, 1927, the defendant national bank answered by general demurrer, several special exceptions, and a general denial. It further alleged that the deposit with its predecessor, the state bank, was not a special deposit for the purpose of paying Dillard's draft or check to plaintiff, and denied that the Littlefield State Bank was reincorporated as a national bank. By amendment it further denied that the national bank took over all the assets of the state bank, and alleged that it paid a full and fair consideration for the assets which it took over from the state bank.

Dillard answered by general demurrer and general denial.

The issues were submitted to a jury, which, with their answers, are in effect, as follows:

No. 1. Dillard was a resident citizen of Crosby county on January 15, 1926.

No. 2. He was also a resident of Crosby county on May 10, 1927.

No. 3. That, at the time the Littlefield State Bank accepted the Kahn draft for deposit, it had notice that the draft represented the proceeds of the sale of Neel's cotton.

No. 4. That the Littlefield State Bank was in an insolvent condition on the 27th day of December, 1926.

Judgment was entered for plaintiff against all defendants for $2,916.

■ It will not be necessary for us to discuss the numerous propositions urged, challenging the court's action in overruling the pleas of privilege filed by the banks. The facts show, and the jury found, that the plaintiff, Neel, and the defendant Dillard both resided in Crosby county, where the action was filed. The cotton was sold by Neel to Dillard, and delivered in that county, and the draft given in payment therefor by Dillard, drawn upon himself, with the Littlefield State Bank as payee, was delivered to Neel in that county, and placed in the Lorenzo Bank, in that county, for collection by Neel. Under these facts, Neel had the right to sue Dillard

in that county. Berlowitz v. Standley (Tex. Sup.) 5 S.W.(2d) 963. Dillard, as the drawee of the draft, had accepted it, and by express provisions of Revised Statutes, art. 1986, Dillard and the payee bank, which is alleged to have converted the fund, could be joined in the same suit. Milmo National Bank v. Cobbs, 53 Tex. Civ. App. 1, 115 S. W. 345. The draft in question is as follows:

"Littlefield, Texas, Dec. 9, 1925.

"Pay to the order of Littlefield State Bank $2,916.70 twenty-nine hundred sixteen 70/100 dollars, with exchange, account of 45 B. C., this day sold to W. B. Dillard, which cotton he holds for account Littlefield State Bank, Littlefield, Texas, and subject to their order. Description below. Value received and charge same to account of            Royal W. Neel, Seller.

"To W. B. Dillard, Littlefield, Texas.

"45 B/C  22764 lbs. at 13 cents.

"Refused.

"Accepted Dec. 9, 1925.  W. B. Dillard, Buyer."

Indorsements:

"Pay to the order of any bank, banker or trust company 88–437—88–437. (Prior indorsements guaranteed.) First National Bank in Lubbock, Texas.

"First State Bank of Lorenzo, December 10th, 1925."

"The indorsement of the First National Bank in Lubbock, Texas, has been stamped through: "Indorsement erased."

R. S. art. 1995, provides that no person who is an inhabitant of this state shall be sued out of the county in which he has his domicile, except in certain cases thereafter set out. Subdivision 4, being one of the exceptions to the general rule, provides that, if two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides.

■ The contract for the sale of the cotton had been partially executed in Crosby county by the delivery in that county of the several bales which were situated there. Having the right to sue Dillard in Crosby county, plaintiff, Neel, also had the right to sue the payee bank in that county, upon the ground that it had collected the proceeds of a subsequent sale by Dillard and had converted it, under its banker's lien, to the payment of Dillard's indebtedness, in violation of the implied duty to hold the funds in trust subject to the order of Neel. Hull v. Guaranty State Bank of Overton (Tex. Civ. App.) 199 S. W. 1148; Vaughn v. Farmers' & Merchants' National Bank of Alvord, 59 Tex. Civ. App. 380, 126 S. W. 690; Provident National Bank v. C. D. Hartnett & Co., 45 Tex. Civ. App. 273, 100 S. W. 1024; Bailey v. Triplett Bros. (Tex. Civ. App.) 286 S. W. 914; Milmo National Bank v. Cobbs, supra.

Plaintiff's right to join the Littlefield State Bank as a defendant must be determined upon the answer to the inquiry whether said

bank was either a necessary or a proper party. Richardson v. D. S. Cage Co., 113 Tex. 152, 252 S. W. 747. We need not inquire whether the bank was a necessary party, but it is clear, under all of the decisions, as well as the statutes referred to above, that it was a proper party. We think this is also true as to the Littlefield National Bank. It appears from the record that, after the suit was filed, the Littlefield State Bank became insolvent, and by an agreement between the officers and directors of the respective banks the Littlefield State Bank ceased to do business and transferred its building, certain real estate, and all of its personal assets, except some notes, which the bank commissioner had declared to be worthless, to the Littlefield National Bank.

■ The appellant contends that the record fails to show that the Littlefield State Bank was insolvent at the time of this assignment, insisting that one is not insolvent as long as the value of its assets exceeds the sum of its liabilities. While that is the general rule applicable to individuals, a different rule prevails with reference to banks and trust companies. The Supreme Court of Pennsylvania, in Commonwealth v. Tradesmen's Trust Co., 237 Pa. 316, 85 A. 363, defined insolvency as the term is related to a bank, as follows:

"It is not insolvency, in its popular sense, that the law regulating banks and trust companies and kindred corporations deals with, but insolvency in its legal sense, which exists whenever such an institution as this, from any cause, is unable to pay its debts in the ordinary or usual course of its business."

This definition has been adopted by the Supreme Court of this state in the case of Turkey State Bank et al. v. Estelline State Bank, 272 S. W. 775.

The record, without serious contradiction, shows that for several days before the Littlefield State Bank closed its doors it had liabilities aggregating $330,000, and assets of only $256,000. The depositors were making a run on the bank, and had been for about two weeks slowly and gradually withdrawing their funds. On the morning of the 24th of December, it had only about $1,600 in cash on hand and about $3,600 with its reserve agents. The total amount of its deposits exceeded $218,000. Its reserve was $25,000 short. It had borrowed to the full extent permitted under the statute, and owed, in addition to that, more than $40,000 to certain banks at Plainview and at Happy. Its own cashier testified that it was impossible for it to have opened as a bank on the 24th of December. The minutes of the First National Bank, which relate to the transaction through which it acquired the assets of the state bank, recite that the state bank was in danger of immediate suspension and would be forced to close its doors. The national bank refused to accept the $35,000 in notes which had been declared to be worthless, and these notes were transferred to a trustee for the benefit of the stockholders. Under these circumstances, the state bank had absolutely nothing out of which a creditor could realize upon a claim.

■ R. S. arts. 531 and 532, prohibit a state bank, when insolvent, from transferring its assets, or making an assignment while in that condition. The evidence clearly shows that the First National Bank of Littlefield had notice of this fact when it accepted the assignment of the assets of the state bank. Under such circumstances, it must be held liable as a trustee for the benefit of the creditors of the state bank, as held in Jackson v. Chapman, Bank Commissioner (Tex. Civ. App.) 263 S. W. 958. As such trustee, it could properly be joined with Dillard in the suit filed by Neel in Crosby county.

■ The holding in the Jackson Case is, in effect, that the national bank in the instant case is also liable upon its assumption to pay the depositors of the state bank, and is liable under the trust fund doctrine, as recognized and enforced in Texas. The general rule is that a contract made in violation of an express statute, or where its performance will result in such violation, is void and unenforceable. Ferguson v. Mounts (Tex. Civ. App.) 281 S. W. 616; Texas Employers' Insurance Association v. Tabor (Tex. Com. App.) 283 S. W. 779; Featherston v. Boxberger (Tex. Civ. App.) 255 S. W. 998; Miller v. Babb (Tex. Com. App.) 263 S. W. 253; 13 C. J. 420. In any event,' we think the national bank is a proper party to this action and can be made to answer in Crosby county.

■ Dillard testified that he bought Neel's 45 bales of cotton on the morning of December 9th, and immediately went to Lubbock and sold the cotton that day to Kahn & Co., and then went to Littlefield, and had a talk with Pope, the vice president of the Littlefield State Bank that night, and told Pope then that he had purchased cotton at Lorenzo that morning which he had sold to Kahn & Co.; that he then made the draft on Kahn & Co., which he left with Pope until the bill of lading was received from Lorenzo; that he did not take credit for the Kahn & Co., draft that night; that on December 12th he had received the bill of lading for the Neel cotton, which he gave to Pope, and which was attached to the Kahn & Co. draft; that he then showed Pope a stub of his check book, which showed that he' had given Neel the draft or check set out above in payment for the latter's cotton. This evidence is sufficient to show that on December 12th, when the Kahn & Co., draft, with the bill of lading, was taken by Pope for his bank, Pope had notice that Neel held the unpaid draft, which was really issued by Dillard, though signed by Neel as drawer, in payment of the cotton. Neel testified without contradiction that "the transaction was a strictly cash consideration. I absolutely did not intend that he (Dillard)

should take the cotton without payment." He also testified that he had made other sales prior to that time to Dillard, who had given him similar drafts, which the state bank had theretofore paid promptly. This testimony also shows that the sale from Neel to Dillard was conditional, and did not become absolute until payment of the draft. The evidence, as a whole, brings this case within the rule declared in the following cases:

Berlowitz v. Standley, supra, in which Judge Greenwood said:

"Under the telephone contracts, the cotton was sold on conditon of payment of the sellers' draft. The sale would remain incomplete, with title in the sellers, until this condition was complied with. Lang v. Rickmers, 70 Tex. 110, 7 S. W. 527."

Menke v. First National Bank (Tex. Civ. App.) 206 S. W. 693, where Chief Justice Huff said:

"As we understand the rule, where the terms are cash on delivery, if such was the contract, the concurrent payment upon delivery was essential to pass title, and, if there was nothing in the transaction which would create an equitable estoppel against the vendor, he may take the property in the hands of an innocent subvendee."

Ewing v. Sylvester (Tex. Civ. App.) 94 S. W. 405, where James, C. J., said:

"Where a sale is made under an agreement that a portion of the price shall be paid in cash, and a draft given for the cash payment is dishonored, the title does not pass."

In Continental Bank & Trust Co. v. Hartman (Tex. Civ. App.) 129 S. W. 179, Talbot, J., held that, where a sale is for cash, a delivery subject to the payment of the price passes no title, and also held that the seller may sue the buyer on the check and the bank thereon or in the alternative, for the value of the goods.

24 R. C. L. 23, announces the general rule, which is recognized as the law governing conditional sales for cash in other cases in this state.

Since the state bank took the proceeds of the cotton, when received from Kahn & Co., with notice that it was Neel's money, it became the trustee of the fund for the payment of Neel's draft, as it had theretofore done upon several occasions, and could not apply it to the payment of Dillard's overdraft. This was declared to be the rule in Davis v. Panhandle National Bank (Tex. Civ. App.) 29 S. W. 926, and has been followed and adhered to in the following cases: Steere v. Stockyards National Bank, 113 Tex. 387, 256 S. W. 586, 258 S. W. 1042; Morris County National Bank v. First State Bank (Tex. Civ. App.) 245 S. W. 86; First National Bank of Greenville v. First State Bank, 252 S. W. 1089. And this holding seems to be in accord with the weight of authority announced in other jurisdictions. 31 A. L. R. 578, note; 54 A. L. R. 526, supplemental note.

By the eleventh proposition appellant complains of the refusal of the court to submit a special issue to the jury, inquiring whether the deposit was a special deposit. That question was not raised by the evidence, and, according to our view of the case, was an immaterial matter. Therefore the court did not err in refusing to submit the requested issue.

We find no reversible error in the record, and the judgment is affirmed.