BROWN v. GAINESVILLE NAT. BANK et al.
No. 15345.

Court of Civil Appeals of Texas.
Fort Worth.
May 2, 1952.

Rehearing Denied May 30, 1952.

Aycock & Camp, of Fort Worth, for appellant.

C. J. Brannan, of Wichita Falls, for appellee, Bell Oil & Gas Co.

Cecil Murphy, of Gainesville, for appellee, Gainesville Nat. Bank in Gainesville.

RENFRO, Justice.

This suit was brought by R. D. Brown, Jr., d/b/a Muenster Oil & Gas Company, against the Gainesville National Bank, hereinafter called Bank, and the Bell Oil & Gas Company, hereinafter referred to as the Bell Company, for the sum of $2,617.-19, being the value of oil runs for January, 1950, from certain described leases owned by appellant. In his petition appellant alleged that for several years one John W. Ezell, the lessee of a gathering system and pipe line, operating under the name of Muenster Pipe Line Company, ran oil, produced by appellant, for sale to the Bell Company by the transportation of such oil to the Stanolind Crude Oil Company; that the Bell Company would pay Ezell and Ezell would then pay appellant and others. Appellant alleged that in January, 1950, having had some difficulty in collecting for his December runs, he made an agreement with the Bell Company through its agent Horner that thereafter the Bell Company would pay appellant direct or see that he was paid; and that thereafter the Bell Company informed appellant that both Ezell and the Bank had agreed that appellant would be paid direct. Appellant alleged that on February 11, 1950, the Bell Company sent its check in the amount of $6,600 to the Bank and the Bank credited same to Ezell's account to it; that said sum constituted trust funds and the Bank knew of the character of the funds and therefore is liable to appellant for the amount of his oil runs included in said check.

Trial was had to the court and judgment rendered that appellant take nothing, the court holding no agreement was made by Bell Company with appellant, and that the funds represented by the check did not constitute trust funds.

In his first point of error, appellant takes the position that his testimony

concerning the conversation with Horner was uncontroverted and therefore conclusive upon the trial court. Appellant argues that his own testimony concerning his conversation with Horner is clear, direct, positive and unequivocal, while he alleges Horner actually testified to nothing, the sum and substance of his testimony being that "He didn't remember." Our examination of Horner's testimony shows that he did answer that he "didn't remember" certain phases of the conversation testified to by appellant, but we find that on both direct and cross examination Horner replied with an equivocal "No" to questions whether he made any agreement with appellant that the Bell Company would pay him direct or have it done. Having reviewed the entire testimony of both appellant and Horner, we find that Horner's testimony was sufficient to put in issue appellant's version of the conversation. In our view, the matter developed into a disputed issue as to whether Horner made the promise claimed by appellant. The trial court determined such dispute against appellant. Since the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony, we are without authority to disturb his findings. 3 Tex.Jur., p. 1102, § 771; Corn v. First Texas Joint Stock Land Bank of Houston, Tex.Civ.App., 131 S.W.2d 752, error refused. Appellant's point number one is overruled.

By his second point appellant contends the court erred in holding Horner was not acting within the scope of his employment in the conversations with appellant. Since the trial court has found no agreement was made by Horner with appellant, it becomes immaterial whether or not Horner was acting within the scope of his employment.

In his remaining three points, appellant contends (a) the Bank had notice that the funds deposited by the Bell Company belonged to parties other than Ezell and it was therefore not entitled to set off such funds against a debt owed it by Ezell; (b) the court erred in holding that certain transit receipts were in effect bills of lading, representing oil, subject to transfer; and (c) the deposit of funds by the Bell Company was made for a specific purpose and

therefore the court erred in holding that same were not trust funds.

Appellant relies on Eastland County v. Chapman, Tex.Com.App., 277 S.W. 629; Guaranty State Bank v. Sumner, Tex.Civ.App., 278 S.W. 459; First National Bank v. Neel, Tex.Civ.App., 10 S.W.2d 408; and Steere v. Stockyards National Bank, 113 Tex. 387, 256 S.W. 586, which cases hold, in substance, that where a bank has notice that a deposit is in truth the property of another than the depositor, or is a trust, it may not deal with the deposit thereafter in disregard of the rights of the real owner or beneficiary.

The trial court's findings of fact, based on evidence of probative value, distinguish this case from the above cited cases.

Appellant testified that for several years he sold the oil from his lease to Ezell and that Ezell alone paid him for it, and the court has found that he did so sell to Ezell. The January run was handled as usual. The Stanolind issued three transit receipts to Ezell. One dated January 16, 1950, was assigned and pledged to the Bank to secure a $2,750 demand note made by Ezell to the Bank, dated January 23, 1950, and on January 24, a transit receipt dated January 23, 1950, was assigned and pledged to the Bank by Ezell to secure a $2,500 demand note, and on January 31, 1950, a third transit receipt was assigned to the Bank by Ezell and a $1,200 demand note executed by Ezell. The court found that all of the above transactions were done, in so far as the oil from appellant's leases was concerned, prior to any complaint being made by him to either of the appellees. Appellant testified that he had been selling his oil to Ezell for several years and that he had reported to the Railroad Commission that his oil for January, 1950, had been sold to the Muenster Pipe Line Company (Ezell). The Bell Company was not required to pay for any oil delivered to the Stanolind Company until Ezell furnished the Bell Company delivery tickets of such company. Under the testimony and the trial court's findings, it is clear that Ezell purchased the oil from appellant and acquired possession and title to it and that as of January 24, Ezell was a debtor to appellant. As heretofore pointed

out, the Bank, in good faith, had advanced money to Ezell on the strength of the transit receipts and the trial court has found that at the time such assignments or transfers were made to the Bank it had had no complaint or notice from appellant or anyone else that Ezell had no right to make such assignment or transfers. The record shows $6,450 of the $6,600 check issued by the Bell Company to the Bank was applied to the payment of the demand notes theretofore executed by Ezell. Some of the money advanced by the Bank to Ezell in January was apparently deposited by Ezell to cover his check to appellant for December runs. We think the court did not err in holding that the check in question did not represent trust funds.

■ Appellant argues that the transit receipts were not bills of lading but were mere invoices, and contends that the purported assignment could not confirm appellee Bank's right to appropriate the funds deposited by the Bell Company to its own use and benefit. As we have already pointed out, appellant had sold the oil on credit to Ezell. He had already parted title with it and established the relation of debtor and creditor with Ezell. We think it not important the nomenclature given to the transit receipts. Ezell could not collect from the Bell Company without producing the receipts and, according to the undisputed testimony, he had pledged prior receipts to the Bank for loans, and as between Ezell and the Bank the transit receipts were sufficient to evidence loans made by the Bank to Ezell and thereby authorize the Bank to collect the money due on the oil represented by the transit receipts. The Bank being a bona fide assignee of the transit receipts, no error was committed by the court in holding that they were in effect bills of lading.

What we have said disposes of the contention that the check by the Bell Company was made for a specific purpose constituting a trust fund. In our opinion the check issued by the Bell Company to the Bank was a bona fide payment for oil runs procured by it from Ezell and did not constitute trust funds.

After careful consideration of appellant's points of error, we have concluded that the law suit resolved itself into fact questions and the trial court having made his findings on such facts, we are bound by same.

The judgment of the trial court is affirmed.