WITHERSPOON – McMULLEN LIVE
STOCK COMMISSION CO. v. NORTH
TEXAS TRUST CO. (No. 9022.)

(Court of Civil Appeals of Texas. Ft. Worth.
March 8, 1919. Rehearing Denied
April 19, 1919.)

TRUSTS ⟷356(2)—PROPERTY DELIVERED TO
THIRD PERSON—LIABILITY.

Where plaintiff advanced funds to enable the borrower to purchase 133 cattle, and in a letter inclosing a .check to defendant the seller gave notice that plaintiff contemplated the purchase of such number of cattle, and defendant applied a portion of money to a debt due from the borrower selling 93 cattle and accepting the borrower's explanation that he was to give a mortgage on 40 other cattle which he already owned, defendant is liable for sum applied on the debt; the same being a trust fund, and defendant appropriating it with knowledge of its character.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by the North Texas Trust Company against the Witherspoon-McMullen Live Stock Commission Company. From a judgment for plaintiff, defendant appeals. Affirmed.

B. K. Goree and Slay, Simon & Smith, all of Ft. Worth, for appellant.
McLean, Scott & McLean, of Ft. Worth, for appellee.

CONNER, C. J. The appellee trust company, a corporation engaged in lending money, sued the appellant, the Witherspoon-McMullen Live Stock Commission Company, hereinafter referred to as the Commission Company, for the recovery of $2,200 and interest, etc.

The plaintiff alleged that on August 7, 1916, one S. L. Eddleman applied for sufficient money to buy 133 head of steer cattle, representing that the Commission Company was willing to sell him that many head of cattle for $6,945.06, and would do so if the Trust Company would send the Commission Company its check for that amount; that in compliance with said request, the plaintiff on August 7, 1916, sent to the Commission Company its check for the amount stated, which was received and cashed by it.

It was further alleged that the defendant Commission Company did not sell to Eddleman 133 head of cattle, but only 93 head, and applied $2,200 of the money so transmitted by the plaintiff to an old debt due by Eddleman to the defendant Commission Company; that the defendant knew that Eddleman was not purchasing 133 head of cattle and plaintiff would lose its $2,200 if said amount was applied to the payment of the debt due by Eddleman.

It was further alleged that defendant represented that Eddleman was purchasing 133 head of cattle, and thereby induced the plaintiff to issue its check, as stated, to the plaintiff's damage in that amount; it being further alleged that Eddleman was insolvent. There were other allegations which we think unnecessary to notice.

The defendant answered by general demurrer and general denial, and specially pleaded, in substance, that prior to August 7, 1916, Eddleman had advised the defendant Commission Company that he had arranged a loan from the plaintiff to take up the indebtedness that Eddleman was owing to the defendant Commission Company and to purchase additional cattle, and that the money to be so advanced was to be secured by a mortgage on cattle Eddleman represented he then had, and on the cattle that Eddleman was going to purchase; that, so understanding, the defendant sold or caused to be sold to Eddleman 93 head of cattle at $50 per head for the total sum of $4,650, and gave to Eddleman an account sales showing the purchase price of said cattle, the total amount of said purchase price and debt having been previously furnished.

It was further alleged that thereafter the plaintiff's check for $6,945.06, representing the purchase price of said 93 head of cattle, and the balance then due on Eddleman's note, was received, and that said money was applied to the payment of the cattle bought, and to the liquidation of the Eddleman note and indebtedness.

The defendant further alleged that plaintiff had taken as security for its advancement a chattel mortgage on 93 head of cattle purchased as alleged, and on 40 head of cattle, and 159 head of cattle then represented by Eddleman to be owned and held by him in Parker county, Tex., that, if plaintiff was misled, deceived, or defrauded by Eddleman, it was the result of the negligence of plaintiff, and that it was estopped from recovering the money, for the reason that at the time of said application of moneys advanced by plaintiff to Eddleman's debt the defendant had surrendered and delivered to Eddleman valuable security and a mortgage it had on cattle which Eddleman had represented that he had in Parker county.

Upon the conclusion of the evidence the court gave a peremptory instruction to find for the plaintiff. The jury returned a verdict in accordance with this instruction, and plaintiff was awarded a judgment in the sum of $2,200, with interest at 6 per cent. from August 7, 1916, and the defendant has appealed.

In one form or another the questions raised by the assignments of error require a consideration of whether the evidence was such as to authorize the peremptory instruction. We

---

⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

have carefully considered the evidence, and are not able to say that the court's instruction thereof was erroneous. We will not set out the evidence at length, but it may be briefly stated that the following facts are undisputed: It is undisputed that Eddleman applied to the appellee Trust Company for money with which to purchase cattle from the Commission Company. The Trust Company finally agreed to advance the amount of money necessary for the purchase of 133 head of cattle, and the Commission Company, after inquiry upon its part, was so informed; that Eddleman, in fact, purchased but 93 head of cattle, for which he was charged by the Commission Company $4,650. He, however, represented to the Trust Company that he had bought 133 head of cattle, upon which, together with the 159 other head of cattle which he owned in Parker county, he secured the advancement in money to be made by the Trust Company. Before, however, the Trust Company would deliver its check, the Commission Company was informed that it, the Trust Company, must have an account sales of the cattle Eddleman had purchased. Soon thereafter the Trust Company received through the mail the Commission Company's account sales in the following terms:

Ft. Worth, Texas, 8—5, 1916.
Bought for the Account of S. L. Eddleman, Weatherford, Texas.

| Purchaser. | Cattle. | Price. | Total. |
|---|---|---|---|
| Cochron | 93 steers branded C–S left side | $50 | $4,650 00 |
| Cochron | 40 steers branded L right side | | $2,295 06 |
| | | | $6,945 06 |

Upon receipt of the account sales the Trust Company issued and mailed to the Commission Company its check for $6,945.06, of which $2,200 was applied by the Commission Company to the payment of the debt due it from Eddleman.

The testimony of the Commission Company is to the effect that the account sales, as actually made out by it, only included the 93 head of cattle branded C–S, left side, and that the 40 head branded L on the right side had been fraudulently inserted by Eddleman. There is no evidence, however, that tends to show that the Trust Company, who advanced its money on the faith of this account sales, had knowledge or was put upon inquiry as to Eddleman's forgery, if any. It seems undisputed that the Trust Company's advances were in all things in good faith, and that it was so induced to do upon the representations of Eddleman and of the statement of the account sales by the Commission Company.

The check transmitted to the Commission Company was inclosed in the following letter of the Trust Company:

"Ft. Worth, Texas, 8—7—16.
"Witherspoon Live Stock Commission Company, Stockyards Station, Ft. Worth, Texas—Gentlemen: We beg to inclose you our check for $6,945.06, same being for account of 133 steers bought from you by S. L. Eddleman.
"Yours very truly."

In reference to this letter Mr. Cochron, the agent of the Commission Company, acting in its behalf, testified as follows:

"I received the letter and the inclosed check and noted that the check was enough to pay for the 93 head of cattle and also the balance due on the note. Shortly after I got the letter Mr. Eddleman came into the office, and I showed him this letter and told him, 'Mr. Eddleman, this calls for 133 head of cattle.' When I got the letter my first impulse was to call up the North Texas Trust Company and tell him that this letter was wrong; that we had only sold him 93 head of steers. The thing that kept me from calling up Mr. Davidson and asking him about the 133 not being the number of steers we had actually sold to Eddleman was that Mr. Eddleman came in the office shortly after we got this letter, and I showed him the letter, and I said, 'This letter calls for 133 head of cattle, and we only sold you 93 head,' and the cattle were in the yards at that time; they hadn't been shipped out yet, the 93 head; and he said: 'They made a mistake; this 40 head of cattle is the additional 40 head of cattle that I told him were out at Weatherford in connection with the other cattle, 40 head of two year old steers that I have out there.' Well, that explained it perfectly satisfactory to me, and I didn't think anything about it not being correct or that he didn't have the 40 head of cattle or that he hadn't made such explanation to Mr. Davidson, so I just threw the letter down and gave him a release then and there, and I supposed that everything was straight and correct, not dreaming for a minute that Mr. Eddleman was trying to do anything wrong."

It further appears that, a few days after the plaintiff Trust Company transmitted its check to the Commission Company, the Trust Company's agent discovered the fact that Eddleman had purchased but 93 head of cattle, and thereupon sought and took possession of the 93 head which had been so purchased, and later sold them; other cattle which Eddleman represented that he owned in Parker county not having been found.

It seems clear that, as between the plaintiff Trust Company and Eddleman, the money advanced by the former for the purchase of cattle was a trust fund, and a misapplication thereof by Eddleman would constitute a conversion, and appellant, having notice, is in no better position. Defendant makes no contention that it had a right to appropriate any part of the money advanced by the Trust Company to the payment of Eddleman's debt, if done without the knowledge or consent of

the Trust Company. Its reliance was wholly upon the agreement and statements of Eddleman, which, in the absence of notice to the Trust Company, does not bind the latter. We do not find it necessary to pass upon the good faith of the agent of the Commission Company in relying upon Eddleman's representation that the loan from the Trust Company secured by him was for the purchase of cattle, and also for the purpose of the payment of his debt, but of this it is clear that the Trust Company had no notice, and it is further clear that the Trust Company was only induced to advance its moneys upon the faith that it would be applied upon the actual purchase of cattle, upon which it was to have a mortgage. Of this the agents of the Commission Company clearly had notice. They also had notice from the letter inclosing the Trust Company's check that the Trust Company was acting upon the assumption that 133 head of cattle had been purchased, and that the moneys advanced was for the purchase of cattle, and not for the payment of the debt due from Eddleman. Having such notice it was the duty of the agents representing the Commission Company to notify the Trust Company of the mistake, if any, claimed to be in the account sales. If they saw proper to trust Mr. Eddleman's explanation, the risk of its falsity must fall upon the Commission Company, and not upon the Trust Company, which acted in good faith. It is a familiar doctrine that he who trusts most must suffer most, and we see no escape from the conclusion that the undisputed facts show that the Trust Company had a right to recover the fund.

It is true there is a further suggestion in the pleading and in the evidence that the Commission Company surrendered to Eddleman a mortgage that it had upon the cattle to secure the Eddleman note, but with the notice it had of the Trust Company's relation to the fund the surrender was made at its peril. Besides there is nothing in the evidence to indicate that at the time of the surrender the mortgage had any real value; for the evidence seems to leave it unquestioned that Eddleman was insolvent and did not own or have in his possession the cattle in Parker county upon which the Commission Company's mortgage rested.

The further contention, under one of appellant's assignments, to the effect that the plaintiff could not recover the money advanced and appropriated by the appellant to the payment of Eddleman's debt because such money could not and was not identified as being held by the appellant, has no application in this case.

On the whole we conclude that the court committed no error, and that the judgment must be affirmed.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes