**MORRIS COUNTY NAT. BANK v. FIRST STATE BANK OF NAPLES.   (No. 2599.)***

(Court of Civil Appeals of Texas. Texarkana. Nov. 8, 1922.   Rehearing Denied Nov. 23, 1922.)

1. **Depositions ⬅83(3)—Courts should suppress depositions where parties or attorney act as typist.**

Courts should suppress depositions wherein parties to the suit, their agents or attorneys, act as clerk or typist.

2. **Appeal and error ⬅1043(6)—Failure to suppress deposition typed by plaintiff's attorney not reversible error.**

Where a witness was placed on the stand at trial, and the parties had the benefit of his oral testimony, the failure to suppress his deposition, typed by plaintiff's attorney at the direction of a notary, was not reversible error.

3. **Banks and banking ⬅130(3) — Proceeds from sale of cotton held impressed with trust for bank advancing funds.**

Where plaintiff bank advanced funds to purchase cotton, title to be taken in its name, and the buyer sold a "pool" owned by several parties, including cotton purchased by plaintiff, although plaintiff did not know its cotton was being sold, the custom being for banks to retain the weigher's certificates and permit buyer to ship in his own name, and where defendant bank had notice of plaintiff's claim for cotton in the pool before shipment, when the buyer drew drafts with bill of lading attached and deposited them with defendant and when the proceeds were remitted to defendant, the buyer drew a check to plaintiff on defendant which it refused to pay, and defendant credited the proceeds on buyer's antecedent debt, the proceeds were impressed with a trust in favor of plaintiff.

4. **Banks and banking ⬅134(7) — Right of bank to apply trust funds to trustee's individual debt.**

Where plaintiff bank advanced funds to purchase cotton, title to be taken in its name, and buyer sold a "pool" owned by several parties, including cotton purchased by plaintiff, although plaintiff did not know its cotton was being sold, the custom being for banks to retain the weigher's certificates and permit buyer to ship in his own name, and where defendant bank had notice of plaintiff's claim for cotton in the pool before shipment, when buyer drew drafts before shipment through defendant, the proceeds of which were impressed with a trust in plaintiff's favor, in plaintiff's action against defendant, the doctrine of equitable setoff had no application.

5. **Appeal and error ⬅1011(1)—Trial court's findings on conflicting evidence conclusive.**

Findings of the trial court on conflicting evidence are binding and cannot be set aside on appeal.

Appeal from District Court, Marion County; R. T. Wilkinson, Judge.

Action by the First State Bank of Naples against the Morris County National Bank. Judgment for plaintiff, and defendant appeals. Affirmed.

The appellee, the First State Bank of Naples, brought the suit against R. E. Weaver, the Morris County National Bank, and several other defendants, claiming that they had, acting together and separately, converted 14 bales of cotton belonging to the First State Bank of Naples. The petition further alleged, as a separate count, that the Morris County National Bank had collected, held, and refused to pay over to the First State Bank of Naples, on proper demand therefor, the sum of $1,142.63, which legally belonged to the appellee bank, as proceeds of the sale of 14 bales of cotton. The appellant filed a general denial, and specially pleaded that the First State Bank of Naples was not the owner of the cotton nor

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction January 17, 1923.

the money, and did not have a lien on the cotton, but that R. E. Weaver was the sole owner and entitled to the possession of the cotton, and that he had sold it, and, after having deposited the proceeds of the sale to his individual credit, then applied it to the part payment of his debt to appellant.

At the conclusion of the evidence the plaintiff in the suit dismissed the alleged cause of action against all the defendants except R. E. Weaver and the Morris County National Bank.

The court on his findings of fact and the undisputed evidence entered judgment in favor of the First State Bank of Naples against the Morris County National Bank for $991.54, with interest. The court also entered judgment against R. E. Weaver. The Morris County National Bank appeals from the judgment.

The following are the findings of fact and conclusion of law filed by the trial court:

"(1) I find that during the time of the transactions involved in this case, and for some time prior thereto, plaintiff, the First State Bank of Naples, and the defendant the Morris County National Bank engaged in a general banking business in the town of Naples, Morris county, Tex., and that during said period the defendant, R. E. Weaver, was engaged in buying cotton at said place.

"(2) On October 13, 1920, R. E. Weaver began the purchase of cotton at Naples from farmers bringing cotton in for sale, after he purchased the seller carried it to the cotton yard, and it was there weighed by Melvin Smith, another defendant, who issued a weigher's certificate, which certificate showed the number the bale weighed, the date when weighed, the party for whom weighed, the party to whom sold, gin number, gin weight, weigher's number, condition, actual weight, dockage suggested, and the net weight of the bale of cotton, and containing the following clause at the bottom: 'This is to certify that I have this day weighed the above cotton, and that the weight and condition as set forth are true and correct'—which certificate was signed by said Melvin Smith, as public weigher of precinct No. 4, Morris county, Tex., and stated at the top of same as follows: 'State certificate of weights and measures,' and was impressed by the seal of his office. The cotton remained in possession of said Melvin Smith until sold.

"(3) On receiving the certificate representing the cotton involved in this case from the weigher, the seller of the same carried the same to the office to the defendant R. E. Weaver, who made a check for the value of the cotton represented by the certificate and attached the check and certificate drawn on the First State Bank of Naples in favor of the seller of the cotton. When the said certificate and check was presented to the First State Bank of Naples, the said check was paid by the bank, and the bank retained the certificate and carried it as a cash item in cotton.

"(4) I find that, when R. E. Weaver came to Naples, he was without funds to buy cotton, and that he made the following agreement with the First State Bank of Naples, by which he was to secure funds to pay for cotton, the agreement being as follows: 'R. E. Weaver was to buy the cotton and give the seller a check on the First State Bank of Naples, and the bank was to pay the check given for the cotton and take the weigher's certificate and hold the same. It was agreed that the bank should have the exclusive ownership and control of the cotton, and that when the cotton was sold all the purchase money for the same paid by the bank was to be paid to the bank, and, if there was any profit made, the profit should go to the defendant R. E. Weaver. The bank was to receive nothing in the transaction, except its money back with legal interest. The understanding was that just as soon as the cotton was bought it became the property of the bank, and the proceeds of the sale was to be paid to the bank. R. E. Weaver had no authority to sell the cotton without the consent of the bank.'

"(5) In pursuance of this agreement and understanding, I find that 14 bales in issue in this suit were paid for by the First State Bank of Naples in the above manner, except 3 bales, which were purchased by Mr. Heath, cashier of the First State Bank of Naples, and the said 3 bales was the property of the bank. The certificates for the entire 14 bales was in the possession of the First State Bank of Naples, and had been in its possession all of the time from the date of this trial.

"(6) I find that prior to the agreement between the First State Bank of Naples and R. E. Weaver that R. E. Weaver had bought some cotton, and it was weighed in the same manner as in the case set out in the third finding herein, and paid for by the Morris County National Bank and weighers' certificate held by the said bank, practically as was done by the First State Bank of Naples, however, instead of giving a check, the said R. E. Weaver used a form of bill of exchange or acceptance, as follows:

" 'The Morris County National Bank.

" 'Naples, Texas, 11—15, 1920.

" 'Days after date pay to the order of the Morris County National Bank, Naples, Texas, $87.68, eighty-seven & 68/100 dollars, for 1 B/C 494 Lbs. S. C. (B/L attached. Tickets attached.) Value received and charge to account of    H. A. Ramsey.

" 'To R. E. Weaver, Naples, Texas.'

Accepted 11-15-20
R. E. Weaver
Bill of Exchange

"This form was used by the Morris County National Bank in paying for cotton, the only difference being the names, the amounts, and the dates.

"(7) I find that on the ——— day of November, 1920, that 4 bales, being the 4 bales bought by Mr. Heath, cashier, First State Bank of Naples, was sold by R. E. Weaver to Rash-Brin Cotton Company, and that the 10 bales was sold a short time thereafter to the Turner Cotton Company by said R. E. Weaver; that the 4 bales was sold for $312.77, and the 10 bales sold for $678.77; drafts were drawn by R. E. Weaver with the bill of lading covering the cotton attached to the draft, the drafts being drawn on the purchasers of the cotton and the drafts and bill of lading along with other drafts covering cotton sold at the time by R. E.

Weaver and paid for by the Morris County National Bank, were deposited by R. E. Weaver with the Morris County National Bank for collection. I find that none of the weigher's certificate covering the 14 bales mentioned in these findings were surrendered to either the railroad company or the Morris County National Bank or R. E. Weaver, but were held in the possession of the First State Bank of Naples.

"(8) I find that these drafts were paid upon presentation to the buyers, and the proceeds remitted to the Morris County National Bank. I find that at said time R. E. Weaver was indebted to the Morris County National Bank, and the proceeds of the cotton paid for by the Morris County National Bank, and also the proceeds of the 10 other bales paid for by the First State Bank under its agreement with R. E. Weaver, and the 4 bales bought by Mr. Heath was credited on the account of R. E. Weaver at the time Morris County National Bank, and, after allowing such credit of the proceeds of all the cotton, the said R. E. Weaver still remained indebted to the Morris County National Bank. The Morris County National Bank paid nothing on the drafts and did not advance any money to R. E. Weaver on the drafts at the time they were drawn, but simply credited the proceeds of the drafts on the account of R. E. Weaver, which account was of a greater amount than the proceeds of the drafts.

"(9) I find that a long time prior to these transactions it had been a custom with the banks at Naples to furnish money to cotton buyers for the purpose of buying cotton and to pay for the same and hold weigher's certificates until the money furnished to buy the cotton was paid back, and it was generally understood that banks would retain the certificates and would permit the cotton buyer to ship the cotton in his own name, and the bank would retain the certificates and collect the proceeds of the draft. I find that the Morris County National Bank well knew this custom at such time.

"(10) I find that it was the usual and customary practice at Naples for the weigher to deliver the cotton on the order of the purchaser in whose favor the certificates were issued, without requiring the surrender of such certificates, and all parties connected with this suit were familiar with this custom and practice. I find that the plaintiff did not know that the 14 bales of cotton were being sold by R. E. Weaver at the time they were sold, and did not know until after the sale was made and the draft drawn.

"(11) I find that after the draft had been paid, R. E. Weaver, being indebted to the First State Bank of Naples in the sum of $1,142.63, which amount represented the amount of money that had been paid by plaintiff for the 14 bales of cotton, gave the plaintiff bank a check for said amount, drawn on the Morris County National Bank, which check was duly presented for payment and payment refused by the Morris County National Bank. Afterwards another check was made out for the exact amount of the proceeds of the 14 bales, drawn in favor of the plaintiff, First State Bank of Naples, signed by R. E. Weaver, and drawn on the Morris County National Bank, which check was also presented on December 3, 1920,

and the payment of that check was also refused.

"(12) I find that none of the certificates issued by Melvin Smith were indorsed by R. E. Weaver to any one. However, I find that while the said Melvin Smith was weighing cotton at Naples, he was not a duly qualified public weigher and had no authority to issue public weigher's receipts according to law, but was receiving, weighing, and storing cotton and issuing the usual form of receipts therefor without having properly qualified as public weigher. I find that the Morris County National Bank paid nothing for the 14 bales of cotton and advanced nothing on the draft."

"Conclusions of Law.

"From the above and foregoing, I conclude that the proceeds of the 14 bales of cotton in the hands of R. E. Weaver and in the hands of the Morris County National Bank, under all the facts and circumstances, were impressed with a lien and trust in favor of the First State Bank of Naples, Tex., for the amount furnished in money to buy said cotton, and under all the circumstances surrounded by this case, taking into consideration the custom of the Morris County National Bank in paying for cotton bought by R. E. Weaver and others, was charged with notice of the claim of the First State Bank of Naples, and not having paid any value for the cotton, and not having advanced anything on the draft, could not hold the proceeds of the 14 bales, and I therefore render judgment in favor of the plaintiff for the sum of $991.54, with interest at the rate of 6 per cent. per annum since December 3, 1920, against defendant Morris County National Bank, and that plaintiff is entitled to recover against R. E. Weaver the sum of $1,142.63, which amount shall be credited with any amount received from the Morris County National Bank on this judgment. I further render judgment in favor of the Morris County National Bank against R. E. Weaver for all amounts paid by it to the plaintiff, First State Bank of Naples, on this judgment."

Wheeler & Robison, of Texarkana, for appellant.

Lloyd E. Price and Henderson & Bolin, all of Daingerfield, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] In the first assignment of error it is insisted by the appellant that the court should have suppressed and excluded the depositions of R. E. Weaver. It appears that the depositions were taken at the instance of the plaintiff, and that under the notary's directions the attorney representing the plaintiff acted as a typist and reduced to writing the answers of the witness. The attorney acted merely as a typist. While there was no attempt on the part of the attorney to do anything in any way to influence the witness in his answers, and while there was no sort of wrongdoing in taking these depositions, still, as a matter of policy, the courts should, we believe, suppress all depositions where in the parties to a suit, their

agent or attorney, act in a capacity of clerk or typist in taking the depositions of a witness in a case. But in this particular case the witness was placed on the stand in the trial, and the parties got the full benefit of his oral testimony. Therefore it could not be said that the failure to suppress the depositions was so material an error or injury as to require a reversal of the judgment.

In the assignments of errors numbered 2 to 6, inclusive, the appellant assailed the court's findings of fact Nos. 4, 5, 8, 10, and 12. There is evidence to support these findings, and we do not feel warranted in setting them aside. The evidence on some of the points is conflicting. Therefore the several assignments of errors are overruled.

[3] The seventh assignment of error assails the court's conclusion of law in respect to the facts. It is evident that the court was holding, in the facts found, that the First State Bank of Naples was, between said bank and R. E. Weaver, the beneficiary of the proceeds of the sale of the cotton and entitled to such money, and that the appellant bank had notice of the claim thereto of the First State Bank of Naples, and therefore "could not hold the proceeds of the fourteen bales of cotton." In other words, the court was ruling that R. E. Weaver was holding the funds in trust for the First State Bank of Naples, and that the appellant bank, so knowing, could not legally hold the money collected by it, as the money in this case was collected, and credit it on an overdue debt owing to it by R. E. Weaver. According to the evidence in the case, R. E. Weaver, a cotton buyer, sold 42 bales of cotton to Rash-Brin Cotton Company and 125 bales of cotton to the Turner Cotton Company. The cotton sold in each case consisted of a list of cotton, or "pool," owned and claimed by several parties. In the lists was some cotton on which the appellant bank had advanced the purchase money to R. E. Weaver. Also in the lists there were 14 bales on which the appellee bank had advanced the purchase money to R. E. Weaver. In the court's finding of fact the appellee bank at the time of "the pool" and sale of the cotton was a mortgagee in possession of the cotton to secure $1,142.63 advanced to pay for the cotton. Although, as the court finds, "the plaintiff bank did not know that the 14 bales of cotton were being sold by R. E. Weaver at the time they were sold, and did not know until after the sale was made and the draft drawn," still, as the court further finds, "it was a custom with the banks at Naples," "and it was generally understood, that the banks would retain the certificates (of the cotton weigher) and would permit the cotton buyer to ship the cotton in his own name, and the bank would retain the certificates and collect the proceeds of the draft." "The Morris County National Bank," the court expressly finds, "well knew this custom at such time." After the sale of these lists or "pool" of cotton R. E. Weaver drew drafts for the purchase price of the cotton on the purchasers and attached thereto bills of lading covering the cotton. These two drafts were, as found by the court, "deposited by R. E. Weaver with the Morris County National Bank for collection," and in due course of time "these drafts were paid upon presentation to the buyers, and the proceeds remitted to the Morris County National Bank." The 14 bales in controversy were sold for $991.54. "After the draft had been paid," as the court finds, and, according to the record, when the money came back on the draft, R. E. Weaver gave the appellee bank a check for the $991.54, drawn on the Morris County National Bank, to be paid out of the proceeds of the cotton sale. The appellant bank refused to pay the check on its due presentation for payment, claiming that the money collected had been by it applied on the debt of R. E. Weaver. There is evidence to support the court's findings that appellant had "notice of the claim of the First State Bank of Naples" at the time and before the drafts were sent for collection.

[4] In these findings the doctrine of equitable set off would not have application. The appellee bank had the legal right, in the facts, to have the money paid over to it. First State Bank of Bonham v. Hill (Tex. Civ. App.) 141 S. W. 300; Live Stock Commission Co. v. North Texas. Trust Co. (Tex. Civ. App.) 212 S. W. 278; Shotwell v. Bank, 34 S. D. 109, 147 N. W. 288, L. R. A. 1915A, 715; Platts v. Bank, 130 Minn. 219, 153 N. W. 514.

[5] In the above assignment the appellant bases its contention upon the ground that it had no notice or knowledge of any claim or interest of appellee in the cotton or money, and that R. E. Weaver voluntarily paid the money over on his debt. But there is a conflict in the evidence in this respect, and the trial court's findings are binding and cannot be set aside.

The appellant next insists that the court erred in rendering judgment for more than $678.77, upon the ground that R. E. Weaver had no interest in $312.77 representing 4 bales of the cotton. This contention cannot be upheld, we conclude, in the facts. Both the bank and Weaver had an interest in all the cotton, and with "notice" of such interest the appellant could not hold the money.

Judgment affirmed.